UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kenneth Syncere Rivera, # 318979, <br> *aka Kenneth Rivera,* <br><br> Plaintiff, <br><br> vs. <br><br> William R. Byars, Jr., *Agency Director*; <br> Michael Matthews, *Director of Classification*; <br> Ms. Ogunsile, *ICC*; <br> D. Filmore, *ICC*; <br> Larry Cartledge, *Warden*, <br><br> Defendants. | C/A No. 8:13-936-JMC-JDA <br><br><br><br><br> Report and Recommendation |

## *Background of this Case*

Plaintiff is an inmate at the Perry Correctional Institution of the South Carolina Department of Corrections. According to the South Carolina Department of Corrections website (http://public.doc.state.sc.us/scdc-public/, last visited on Apr. 12, 2013), Plaintiff is serving an eight-year sentence for common law robbery conviction entered in the Court of General Sessions for Greenville County. Plaintiff's projected release date is June 21, 2013.[1]

---

[1] The South Carolina Department of Corrections sometimes releases inmates whose sentences expire during a month on the first day of that particular month. *See Bennett v. Byers*, Civil Action No. 2:12-742-TMC-JDA, 2012 WL 1416511, at *1 (D.S.C. Mar. 30, 2012) ("Plaintiff contends that he should have been released on February 1, 2012, based on a well-known practice of the South Carolina Department of Corrections to release prisoners on the first day of the month of their scheduled release. According to Plaintiff,

(continued...)

Defendant Byars is the Director of the South Carolina Department of Corrections. Defendant Larry Cartledge is the Warden of the Perry Correctional Institution. Defendants Ogunsile and Filmore are members of the Perry Correctional Institution's Institutional Classification Committee ("ICC").

The "STATEMENT OF CLAIM" portion of the Section 1983 Complaint indicates that this civil rights action arises out of Plaintiff's placement in a two-person cell on January 20, 2013. Plaintiff was transferred from the Broad River Correctional Institution to the Perry Correctional Institution on January 8, 2013. Plaintiff states that he was initially placed in a one-person cell in the Y wing of the Charlie ("C") Dorm, but on January 11, 2013, was moved to a two-person cell in the X wing of the Charlie ("C") Dorm. Plaintiff filed a grievance on January 28, 2013, about his cell assignment. Plaintiff contends that his assignment to a two-person cell violates SCDC policy because Plaintiff is a member of a security threat group (STG). Plaintiff also submitted a staff request on February 9, 2013, about his being present at his thirty-day custody review, and filed a grievance about the matter on February 23, 2013. Plaintiff seeks ten thousand dollars in compensatory damages, ten thousand dollars in punitive damages, a court order allowing Plaintiff to be present at his review hearings, release from segregation, court costs, and a jury trial.

Appended to the Complaint are copies of Plaintiff's grievances and correspondence with various officials and employees of the South Carolina Department of Corrections. Two pages of the exhibits indicate that on February 26, 2013, and on March 18, 2013,

---

(...continued)
his correct scheduled release date was February 9, 2012, and, hence, Plaintiff should have been released on February 1, 2012."), *adopted by* 2012 WL 1416484 (D.S.C. Apr. 24, 2012). Hence, it is possible that Plaintiff's actual release date may be June 1, 2013, if Plaintiff avoids disciplinary infractions in the meantime.

Defendant Filmore determined that Plaintiff should remain at Security Detention Level II ("SD-Level II") (ECF No. 1-1, at pages 10-11).

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review[2] has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25, 31–35 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989); *Haines v. Kerner*, 404 U.S. 519, 519 (1972)(*per curiam*); *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 953–56 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70, 71–74 (4th Cir. 1983); *Loe v. Armistead*, 582 F.2d 1291, 1295–96 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)(*per curiam*); and *Cruz v. Beto*, 405 U.S. 319, 321–23 (1972)(*per curiam*). When a federal court is evaluating a *pro se* complaint or petition, a plaintiff's or petitioner's allegations are assumed to be true. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008). Nonetheless, a litigant must plead factual content that allows the court to draw the reasonable inference that the defendant or respondent is plausibly liable, not merely possibly liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–84 (2009). Even when considered under this less stringent standard, the Complaint

---

[2]Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

The Supreme Court has made it clear that prison officials are to be accorded considerable deference in their prison management decisions. In *Thornburgh v. Abbott*, 490 U.S. 401 (1989), the Supreme Court stated that, "Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." 490 U.S. at 407–08 (citing *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974)); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.") (citations omitted).

To prevail in a civil rights action brought under 42 U.S.C. § 1983, a plaintiff must establish two elements: (1) that the defendant(s) deprived him of a right secured by the Constitution or federal law, and (2) that the defendant committed the deprivation while acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Also, in any action brought under § 1983, a court must first identify the contours of the underlying right the plaintiff claims was violated. *Graham v. Connor*, 490 U.S. 386, 394 (1989). This

requires a determination of the particular plaintiff's status at the time of the alleged violations. *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir. 1990).

The act of placing a detainee or prisoner in administrative segregation or higher custody is not punitive *per se* because it is rationally connected to legitimate governmental objectives. Courts have recognized that administrative separation or segregation may, for example, serve any number of the following legitimate interests—"to protect an inmate's safety, to protect other inmates from a particular inmate, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer." *See McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); *see also Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (finding no equal protection violation in protective segregation "where the differences in treatment among prisoners in protective segregation and in the general population ha[d] a substantial, rational basis in the legitimate state interest of prison security"); and *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F. 3d 464, 471–72 (4th Cir. 1999) (placement in long-term segregation for valid prison security purpose does not violate equal protection or Eighth Amendment rights).

It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See*, *e.g.*, the order of the Honorable Henry M. Herlong, Jr., United States District Judge, in *Keeler v. Pea*, 782 F. Supp. 42, 43–44 (D.S.C. 1992), which cites *Meachum v. Fano*, 427 U.S. 215 (1976); *see also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978). In fact, it is well settled that

the placement of inmates into administrative segregation units or similar units is a valid of means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D. Md. 1991); *see also McKune v. Lile*, 536 U.S. at 26 (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");[3] and *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"). Although Plaintiff would prefer to be in a one-person cell in the Y wing of the Charlie Dorm, his placement in a two-person cell in the X wing of the same dorm has not violated his constitutional rights.

Moreover, the absence of a hearing on Plaintiff's thirty-day custody classification review is not a constitutional violation because a custody or classification review is not a disciplinary hearing. *Compare Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004) (outlining six requirements of disciplinary proceedings when good times credits are taken away), *with Sandin v. Conner*, 515 U.S. 472, 484 (1995) (limited right of due process is required only in an inmate disciplinary action that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In other words,

---

[3]Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law. This portion of the holding in *Hewitt v. Helms* has not been superannuated by later case law.

an inmate is deemed to have been deprived of a liberty interest only where the conditions the inmate is subjected to pose an "atypical and significant hardship" when contrasted with the typical incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). Since Plaintiff was committed to the custody of the South Carolina Department of Corrections, officials of the South Carolina Department of Corrections may determine where Plaintiff should be housed. *See Rochester v. McCall*, Civil Action No. 8:11-0398-HMH-JDA, 2011 WL 704890, at *4 (D.S.C. Feb. 22, 2011), which cites *Isgrigg v. CDC*, No. C 06-07618 JW (PR), 2008 WL 754892, at *2 (N.D. Cal. Mar. 20, 2008) ("A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him, or not transfer him in the case of plaintiff, to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution").

## *Recommendation*

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without service of process. Plaintiff's attention is directed to the Notice on the next page.

April 15, 2013                                       s/Jacquelyn D. Austin
Greenville, South Carolina                     United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Larry W. Propes, Clerk of Court**
> **United States District Court**
> **300 East Washington Street — Room 239**
> **Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).